IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNTS OF DAVID PATON, AS TRUSTEE UNDER WILL OF JOHN KURST, DECEASED.

*Will — construction of an alternative devise — when grandchildren are included in a gift to children — when they take under the will and not through their parents — a power of sale to executors must be executed by a trustee and not by the administrator.*

John Kurst died on January 28, 1863, leaving a widow and two sons; a daughter, who was living at the time of the execution of his will, having died before her father. The widow died in 1883, prior to which time one of the sons died, leaving two sons. The testator directed by his will that after the decease of his wife, and after his youngest child should arrive at the age of twenty-one years (which event occurred before the death of the wife), all his property should be sold and the proceeds divided "equally among the children I may then have, or those who may be legally entitled thereto."

*Held,* that the surrogate erred in deciding that the entire proceeds of the property should be given to the surviving son.

That as the direction for the division of the proceeds among the children equally could not be complied with, as but one child was then living, the alternative

direction became effective and required the proceeds to be divided among those who were legally entitled thereto, that is that one-half should be given to the surviving son, and the other half to the two children of the deceased son.

That the same result would be reached by so enlarging the ordinary signification of the word "children" as to include the testator's grandchildren, and that such an enlargement of that term might be made to carry into effect what appeared to have been the intention of the testator.

*Matter of Brown* (29 Hun, 412) followed.

That the widow, of the son who died in the lifetime of his mother, was not entitled to any part of the proceeds, as the grandchildren derived their right to share in the proceeds under the will of the testator, and not through their deceased father.

The testator directed that at the time fixed in his will, the property should be sold by " my executors hereinafter named, or such person or persons as may then legally represent my estate." After the decease of both persons named as the executors in the will, David Paton was appointed a trustee by this court, as well as the Surrogate's Court, to carry those directions into effect. One John B. Kurst was also appointed administrator of the estate by the surrogate. The estate was sold by the concurring action of these two persons.

*Held*, that the surrogate should disallow a claim for commissions upon the proceeds of the sale, made by the administrator.

APPEAL from a decree of the surrogate of the county of New York directing the distribution of the funds of the estate of John Kurst, deceased.

*Thomas Fenton Taylor*, for trustee and others.

*Jesse K. Furlong*, for John B. Kurst.

DANIELS, J. :

The chief controversy presented to the surrogate for his decision arose under the ninth paragraph of the will of John Kurst, deceased. This will was executed in February, 1858, and the testator died on the 28th of January, 1863. At the time the will was executed he had three children, a daughter and two sons. The daughter died on the 21st of January, 1863, and at the decease of the testator he left him surviving his widow and two sons. The widow died on the 29th of October, 1883, and the decease of the son, Charles H. Kurst, preceded that event. This deceased son left him surviving two sons, who have appealed from the decree made by the surrogate. At the time of the decease of the widow, as both the testator's sons had previously attained the age of twenty-one years, the period had

arrived for the sale of the testator's property and the distribution of the proceeds, as that had been directed by him. These directions were made by the following portion of the will: ·

"*Ninth.* I order and direct that after the decease of my said wife, and my youngest child shall arrive at the age of twenty-one years, my executors hereinafter named, or such person or persons as may then legally represent my said estate and the interests of my said children, shall dispose of all such property as may then remain of my said estate, within eighteen months thereafter, either at public auction or at private sale, as such executor, person or persons may, in his or their judgment, deem most advantageous and beneficial to my children, and out of the proceeds thereof, after deducting all necessary expenses, divide the same, together with all other property belonging to my estate, equally among the children I may then have, or those who may be legally entitled thereto." And as but one of the children had survived the surrogate considered him to be entitled to the entire proceeds of the property.

This construction was contested by the two sons of the testator's deceased son, who claimed to be entitled to participate in the division of the proceeds of the estate; and that they were so entitled seems to follow from the language of this portion of the will, for as but one of the testator's children at the time survived no division of such proceeds could by any possibility be made equally among the children then living. This was an impossibility, as all the children at the time were deceased, except the testator's son John B. Kurst. The contingency had in this manner arisen, which was provided for, in case of the inability to divide the property among the children, and the directions were explicit, if a division among the testator's children could not be made, that then it should be among those who might be legally entitled thereto. And it was under this direction of the will, and not that immediately preceding, that the division of the proceeds of the estate was required to be made. This was not only the literal reading of the will itself, but as the facts existed at the time of the testator's decease, it was probably what he in point of fact designed and intended in the event that but one of his children should be living at the time when the proceeds were to be divided. For at that time he contemplated the possible occurrence of such a change in his family affairs prior

to the decease of his widow, as might vest his estate in the descendants of his children or other relatives becoming entitled to it under the statutes of the State, and the language employed by him was selected to provide for this contingent change in the state of his family. In no event did he contemplate or provide for the entire estate vesting in one of his children alone, unless he should be legally entitled to it under the last of the two directions given by him, for a single surviving child would not answer the requirements of the preceding direction, that the proceeds of the property should be divided equally among the testator's children. When that direction could be followed then the intention of the testator would be capable of being executed by literally complying with this language. But if not, then it was the intention that it should not be followed, but that the estate should be divided among "those who may be legally entitled thereto." This, under the circumstances, became the mandatory direction to be observed in the division of the estate, and it entitled the surviving son to one-half of the proceeds, and the two sons of the testator's deceased son Charles H. to the remaining moiety of the estate, to be divided equally between them.

A similar result will be reached by so enlarging the ordinary signification of the word "children" as to include the testator's grandchildren. And that would not be inconsistent with the intention indicated by the will. For in no event does it appear to have been the purpose of the testator to disinherit or deprive of his estate the surviving children of either of his own children, who might be deceased at the time designated when the division of the estate was directed to take place. And such an enlargement of the term may be made to carry into effect what shall appear to have been the intention of the testator. This subject was considered in *Matter of Brown* (29 Hun, 412), and authorities bearing upon the subject were there collated. In either view the grandchildren cannot legally be excluded from participation in the testator's estate, but the proceeds should be so distributed as to give to each of them one-fourth of the amount, and that will effectuate the purpose of the testator of dividing his property equally among his children.

The widow of the testator's deceased son, Charles H. Kurst, also presented a claim for a part of these proceeds, but that claim was disallowed by the surrogate, and the view adopted by him is well

sustained by the fact that the grandchildren derived their right to these shares in the proceeds under the will of the testator, and not through their deceased father. They were given directly to the persons designated in this part of the will by the testator himself. It was not until the decease of the widow that the persons to whom the proceeds were given could be ascertained, and it was to the individuals who came within the description contained in this part of the will at the time of her decease, that the testator's bequests were made. And as the widow of this son was in no event provided for or included among these persons, she had no legal claim to any part of such proceeds.

After the decease of both persons named as the executors in the will, David Paton was appointed a trustee by this court, as well as the Surrogate's Court, to carry these directions contained in it into effect. And John B. Kurst was also appointed administrator of the estate by the surrogate of the county of New York. The estate of the testator was sold by the concurring action of these two persons, and upon the hearing before the surrogate the administrator claimed to be entitled to commissions. But this claim was rejected for the time being by the surrogate and deferred until his accounts as administrator should be presented and settled. And that direction was an appropriate one to be given, for it could not be determined prior to that time what his right to commissions might be. To sell the real estate was the execution of a power in trust vested alone in the trustee, and for that service the administrator was not entitled to compensation. And the agreement which was made by him prior to the time of his appointment seems to have contemplated that he should not claim commissions for concurring and participating in the sale of the real estate. The decree of the surrogate should be so far modified in its directions as to restrict the right of John B. Kurst to one-half the proceeds of the estate, and direct the other half to be divided equally between the two sons of the deceased brother, and as so modified the decree should be affirmed, without costs to either party.

BRADY, P. J., and MACOMBER, J., concurred.

Decree modified as directed in opinion, and affirmed as modified, without costs.